IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND



| | | |
|---|---|---|
| RYAN PATRICK GRIMES, | * | |
| Petitioner, | * | |
| v. | * | Criminal No. L-02-0158 |
| | * | |
| UNITED STATES OF AMERICA, | * | Civil No. L-06-2906 |
| Respondent. | * | |
| | * | |

MEMORANDUM

Petitioner, Ryan P. Grimes, who is now serving a 130 month sentence, has moved *pro se* to set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the motion is DENIED.

I. **Statement of Facts**

On April 4, 2002 Ryan P. Grimes ("Grimes") was indicted on one count of bank robbery in violation of 18 U.S.C. §§2113(a), (f) and 18 U.S.C. §2. On October 1, 2002 the Government sent Grimes's counsel a proposed Plea Agreement, which Grimes accepted and executed on December 2, 2002. On January 24, 2003, Grimes was rearraigned and pled guilty.

On March 26, 2003, AUSA Christopher Romano ("Romano") received a package mailed from Grimes's counsel, David Mister ("Mister"). The package included correspondence between Grimes and Mister. Romano read one letter, dated February 4, 2003, from Grimes to Mister.

While reading the letter, Romano became concerned that the contents of the letter contradicted the factual basis in support of Grimes's guilty plea. Romano then called Mister to alert him to the letter. Mister advised Romano that the letters had been sent inadvertently.

Romano notified the Court of the disclosure. The Court scheduled a hearing, and appointed Keith Bussard ("Bussard") to represent Grimes. Transcript of Hearing, May 28, 2003.

At May 28, 2003 hearing, the Court took up a number of issues, including whether the Court should vacate Grimes's plea of guilty, and whether Mister should continue to represent Grimes. After hearing testimony from Romano, Mister and Bussard, the Court gave Bussard and Grimes an opportunity to confer. After the conference, Grimes reaffirmed his plea of guilty, and renewed his acceptance of responsibility.

After several postponements, the Court held a Sentencing Hearing on July 23, 2004. The Court imposed a sentence of 130 months imprisonment with credit for time awaiting disposition from March 26, 2002, supervised release of three years, a special assessment of $100.00, and restitution $26,224.00.

On August 10, 2004, Grimes filed a Notice of Appeal to the Fourth Circuit. The Appeals Court upheld the conviction and dismissed his appeal in United States v. Grimes, No. 04-4603, 148 Fed. Appx. 150 (2005)(unpublished).

On November 3, 2006, Grimes filed a Motion to Vacate under 28 U.S.C. §2255. The Government responded to the Motion on March 2, 2007. In his §2255 motion, Grimes urges seven grounds for vacating his sentence. Each of these grounds, none of which merits relief, is addressed below.

## II. Grimes Guilty Plea was Voluntarily Made

First, Grimes argues that his guilty plea was involuntary. He writes that though he "did reaffirm" his "guilty plea twice" "he never knew the real facts or law of the actual plea agreement." Further, he claims that his attorneys tricked him into signing the plea agreement by telling him that he would not lose his right to appeal if he did.

2

The plea that Grimes made was voluntary, and he was not coerced into it by his attorneys. Grimes deliberated for two months before signing his plea agreement, during which time he had the opportunity to read the agreement and to ask any questions about its contents.

The entry of a guilty plea is subject to Rule 11 of the Federal Rules of Criminal Procedure. Before accepting a guilty plea, the Court must perform what is known as a "Rule 11 Inquiry" to ensure that the defendant is aware of the rights he is giving up by entering the guilty plea, and to ensure that the plea is knowing and voluntary.

The Court conducted a Rule 11 Inquiry at Grimes' January 24, 2003 rearraignment. On that day, Grimes told the Court that he had read the plea agreement, that he understood it, and that he was entering into it freely and voluntarily. At the May 23, 2003 hearing, Grimes reiterated that he had read the plea agreement, that he understood it, and that he embraced the facts stared within it. Transcript of May 23, 2003 hearing, pages 90-91. At that same hearing, when offered to be shown a copy of the Plea Agreement again, Grimes said "No, I pretty much remember it." Id. at 89. When asked if he was agreeing to plead guilty because he was in fact guilty, Grimes answered, "That is correct." Id. at 91.

In the appeal of the matter, the Fourth Circuit Court of Appeals ruled that, "the record reveals that the district court conducted a thorough Rule 11 inquiry and specifically questioned Grimes about whether he understood that he was waiving his appellate rights. Grimes answered that he did. The record reveals that the court questions Grimes about his understanding of the waiver provision." United States v. Grimes, No. 04-4603, 148 Fed. Appx. 150, 151 (2005)(unpublished). Grimes' claim that his plea was involuntary must be rejected.

3

### III. Grimes was Not Denied Effective Assistance of Counsel

Grimes argues that he was denied effective assistance of counsel. Grimes claims in both his original Motion to Vacate and in his Amended Motion to Vacate, Set Aside or Correct Sentence that both of his attorneys, Bussard and Mister, proved ineffective by lying to him about his rights under the plea agreement, by releasing privileged letters that Grimes had written to Mister, by refusing to subpoena witnesses who could have testified at the sentencing on behalf of Grimes, by failing to pursue a diminished capacity defense, and by failing to effectively cross-examine his psychiatrist.

The two-pronged test announced in Strickland v. Washington, 466 U.S. 668 (1984) is the benchmark used to determine whether counsel's performance was adequate. First, defendant must show that attorney's representation fell below "an objective standard of reasonableness." Id. at 687-91. Second, the defendant must show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.

The defendant bears the burden of proving Strickland prejudice. A defendant who alleges ineffective assistance of counsel after entering a guilty plea has an even higher burden to meet. See, e.g. Hill v. Lockhart, 474 U.S. 52, 53-59 (1985); and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). In this instance, because Grimes entered a guilty plea, the prejudice prong is slightly modified. The Fourth Circuit has held that in such a case, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hooper,* 845 F.2d at 475.

Grimes fails on both grounds. First, he has utterly failed to show that his attorney's representation fell below an "objective standard of reasonableness." Id. at 474. At the

4

conclusion of the July 23, 2004 Sentencing Hearing, the Court found that Mister had provided "excellent" representation for Grimes. The Court noted that, "[t]his has been an extremely diligent investigation and presentation of issues for sentencing, and Mr. Mister has explored and pursued every angle on behalf of his client." Transcript of Hearing, July 23, 2004, page 71.

Despite Grimes's current criticism of Mister, at the May 23, 2003 hearing the Court expressly gave Grimes the choice of being represented by either Bussard or Mister. Grimes specifically stated that he was "fine" with Mister. Transcript of Hearing, May 28, 2003. The Fourth Circuit has ruled that statements made under oath affirming satisfaction with counsel are binding on the defendant absent "clear and convincing evidence to the contrary." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992). With regard to the second prong of the Strickland test, Grimes has made no showing that had counsel performed differently he would not have not have pleaded guilty, and would have insisted on going to trial.

Regarding Grimes's specific criticisms, the Court finds that they have no merit. First, there is no evidence that Bussard or Mister misrepresented Grimes's rights under the Plea Agreement. As stated, Grimes represented under oath that he understood the plea agreement. Second, the wayward letter did not prejudice Grimes. Misdirecting a letter is not a Strickland violation, but merely a clerical mistake. Third, Mister specifically requested the Court to postpone the Sentencing until Special Agent Brosnan ("Brosnan") could attend. The Court rejected that request because Grimes could not proffer why Brosnan's testimony was of significance to the Sentencing. Indeed, the significance of Brosnan's testimony remains unexplained. Finally, there is no evidence to substantiate Grimes's suggestion that a diminished capacity defense was available to him.

**IV. Grimes Fails to Prove that the Government Breached the Plea Agreement**

5

Grimes alleges that Romano "willfully and unethically" breached the plea agreement and disregarded the order sealing his misdirected letter. In support of this contention, Grimes refers to the Transcript of the July 23, 2004 re-sentencing. As agreed in the plea agreement, Romano moved for a downward departure of two levels under USSG §5K1.1 based on Grimes's substantial assistance to the authorities. Grimes complains that Romano, while addressing the §5K1.1 factors, discussed Grimes's "minuses" as well as his "plusses." Transcript, July 23, 2004 hearing, pages 48-51. The minuses included the Government's concerns about Grimes's credibility.

While discussing Grimes' tarnished credibility, Romano cited examples. For instance, while incarcerated, Grimes complained that he had been sexually assaulted by a female prison guard. Romano pointed out that an investigation had entirely discredited Grimes's story. While incarcerated, Grimes also informed authorities about a planned jail break. An investigation corroborated the existence of the plan but also revealed that Grimes was one of the instigators. Romano also mentioned the misdirected letter, observing that Grimes, by falsely maintaining his innocence to his counsel, had burdened the Court with additional hearings.

In his remarks to the Court, Romano did not breach the plea agreement or act improperly. The agreement called on the government to make a §5K1.1 motion, which it did. After Romano made the motion, the Court asked him to assess the value of Grimes's cooperation. Romano was, at that point, obligated to respond candidly. He did not unfairly "bash" Grimes as Grimes alleges. Instead, Romano, in measured terms, evaluated the significance of Grimes's cooperation, including the government well-founded reservations concerning Grimes's candor.

Grimes contends that the misdirected letter, because it had been sealed, was off-limits. This is incorrect. The Court sealed the letter because it contained information about people who might harm Grimes if his remarks about them came to their attention. The sealing order did not preclude the government from mentioning Grimes's misstatements or the trouble that they had caused the Court and counsel. The Court eventually granted the motion and departed downward by two levels. The number of levels to award Grimes was a matter within the Court's discretion.

### V.  Grimes Lost His Right To Appeal Under the Plea Agreement

Grimes claims that he was denied the right to an appeal. The plea agreement that Grimes signed on December 2, 2002 contained a waiver of appeal. Grimes contends that this provision was not adequately explained to him. As the record clearly demonstrates, Grimes' contention is without merit.

Paragraph Nine of the plea agreement reads:

<u>Waiver of Appeal</u>
9. Your client and the United States knowingly and expressly waive all rights conferred by 18 U.S.C. 3742 to appeal whatever sentence is imposed, including any issues that relate to the establishment of the guideline range, reserving only the right to appeal from an upward or downward departure from the guideline range that is established at sentencing. Nothing in this agreement shall be construed to prevent either your client or the United States from invoking the provisions of Federal Rule of Criminal Procedure 35, and appealing from any decision thereunder, should a sentence be imposed that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory minimum mandatory provision.

During the Rule 11 colloquy, the Court determined that Grimes had read the waiver and understood it. The Court informed Grimes that "[u]nder the law both you and the Government have the right to take an appeal from the sentence that is eventually imposed. This is a waivable right, meaning it can be given up either by you or by the Government. In paragraph nine on page

six, both you and the Government have given up virtually all your appeal rights. Do you understand, sir?" Grimes replied "Yes, your Honor." Transcript of Hearing, January 24, 2003.

On Grimes's direct appeal, the appeals court determined that the waiver of his appellate rights in the plea agreement was knowingly and intelligently made, and was thus enforceable. United States v. Grimes, 148 Fed. Appx. at 151.

## VI. Three Final Contentions

In his petition, Grimes makes three contentions that are not cognizable in a §2255 petition. They are as follows:

a. The government failed to protect him from an attack by three other inmates while in prison.

b. The Bureau of Prisons is not providing him with psychiatric treatment.

c. The Bureau of Prisons has placed him in an incorrect security classification.

The Court lacks the authority to address these claims in a petition filed under §2255.

It is so ORDERED this 17th day of SEPTEMBER, 2009.

Benson Everett Legg
Chief Judge